[No. 10825. Department Two. June 24, 1913.]

*In the Matter of the Estate of* MOLLIE WITT, *Deceased.*[1]

EXECUTORS AND ADMINISTRATORS—FINAL SETTLEMENT—ITEMS AND CREDITS—EVIDENCE—SUFFICIENCY. A charge of $9,500 against an executor for wheat shown by an annual report to have been deposited in a warehouse, is properly reduced to $6,500 on final settlement, where it appears that the annual report by mistake included $3,000 worth of wheat not grown by or belonging to the estate.

SAME. On final settlement of an estate, an executor, charged with the cost of an automobile, is entitled to be credited with its selling price which he had turned into the estate.

SAME. On final settlement, an executor is entitled to credit for an overdraft at a bank where he kept funds of the estate, where the sum was expended on behalf of the estate.

SAME—ATTORNEY'S CHARGES. An attorney's fee of $2,250, allowed for services in the settlement of an estate appraised at $37,761, is not unreasonable, when the estate was kept open a long time in an effort to pay off an indebtedness of $17,000 without disposing of the real estate.

Appeal from a judgment of the superior court for Lincoln county, Baske, J., entered June 5, 1912, upon exceptions to the final account of an executor. Affirmed.

*Lovell & Davis,* for appellant.

*Joseph Sessions,* for respondent.

[1]Reported in 132 Pac. 1012.

FULLERTON, J.—In October 1906, Mollie Witt, then a resident of Lincoln county, Washington, died testate therein, devising her estate to her children and naming her husband, August Witt, as executor thereof. Her estate consisted of 320 acres of farm land which she held in her own separate right, a community interest in 540 acres of farm land, and a community interest in certain personal property, consisting of live stock, farming implements, and farm products; the whole being appraised at $37,761. The indebtedness of the estate at that time was something over $17,000. On April 13, 1912, the executor filed his final account with the estate. This account contained an itemized statement of the receipts and expenditures of the executor during the course of his administration, and showed generally the condition of the estate, and that it was ready to be closed and the property distributed to the heirs and devisees thereof. A time was fixed for hearing the account, at which time the beneficiaries named in the will appeared and challenged the correctness of the account, making specific objections to numerous items contained therein. On the hearing, the court allowed certain of the items objected to, and disallowed others, entering a decree approving the account as corrected, and distributing the estate. The devisees appeal.

Only four of the disputed items are in question in this court. The court charged the executor with the sum of $6,500 on account of the crops from the farm lands for the years 1909 and 1910, whereas the devisees claim that he should have been charged with $9,500. It was shown by the warehouseman's books that wheat to the value of the latter sum was delivered and sold to the warehouse company by the executor during the years named, and it appears that the executor had at one time so reported in one of his annual accounts. But the executor explains that his report was the result of a mistake; that while he delivered and sold to the warehouse company the quantity of wheat shown by their books, a part of it, equal in value to $3,000, was actually grown on lands.

having no connection with the estate of which he was executor, and was included by him in his former account through an error on the part of his counsel. The court gave credence to this explanation, and we feel constrained to do so also.

The second item relates to the purchase price of an automobile purchased by the executor. The executor charged the estate with this item, and the court disallowed it to the extent of $2,000, charging the executor with that sum. The devisees contend that he should have been charged with $2,330 which they contend was the actual cost of the automobile. The evidence as to this item is not altogether clear, but we gather from the record that the machine cost originally $2,330, and that certain additional sums were expended on it to keep it in repair; that it was finally sold as property of the estate for $500, and that the court reached the sum charged the administrator by adding the costs paid out in repairs on the machine to its original cost and deducting from the total the amount for which the machine was sold. If the executor is to be charged with the cost of the machine, he is entitled to be credited with its selling price which he turned into the estate, and no error resulted from so doing.

The third item is a claim of $3,600 owing a local bank by the executor at the close of his administration. It seems that the executor kept his account with the bank, and from time to time during the course of his administration turned into the bank moneys received by him on account of the estate, and checked therefrom, as the money was needed, to carry on the business of the estate; the final result being an overdraft in this sum. If the money was expended on behalf of the estate it was clearly an item for which the executor was entitled to credit. The executor contends that it was so expended, and exhibits his account in proof thereof. His balances indicate his contention to be correct, and we see no reason for drawing a different conclusion.

Finally, it is objected that the fees allowed by the court to the executor's counsel were excessive. These aggregated

$2,250. The allowance may seem liberal, when measured by the appraised value of the estate, but we think it not extravagant, in view of the services performed by counsel. The estate remained open for a long period of time, due, as the executor says, to an effort to pay the indebtedness without disposing of the real property. This added greatly to the work required of counsel, and it seems to us that the fees allowed were fully earned.

The judgment is affirmed.

MAIN, ELLIS, and MORRIS, JJ., concur.